UNITED STATES DISTRICT COURT
WESTERN DISTRICT NY [BUFFALO]
_____

**Ravinder Mehra**, 3 Windermere Way, Princeton, NJ 08 540
**Manju Mehra**, 3 Windermere Way, Princeton, NJ 08 540
**Rohan Mehra**, 3 Windermere Way, Princeton, NJ 08 540
**Rahoul Mehra**, 535 W. 110th St., Apt. 12A, New York, NY 10025

**Kusum A. Zaveri,** 49 Sycamore Ridge, Honeoye Falls, NY 14472
**f/b/o   Dylan R. Reece**
          **Declan Rowan Reece**

**Lisa M. Martin,** 809 Regency Reserve Circle, #4103, Naples, FL 34119

C O M P L A I N T

                                                            Plaintiffs,


                        - vs -


**James Tetrault**, 170 Deer Run, Williamsville, NY 14221

**Ocean Trading Partners, LLC**, 170 Deer Run, Williamsville, NY 14221

**Interim Capital, LLC**, 170 Deer Run, Williamsville, NY 14221

                                                            Defendants.
_____


        Plaintiffs, by their attorney Frank A. Aloi, for their Complaint against defendants,
allege as follows:


## PRELIMINARY STATEMENT


        1.      This is civil case for damages, restitution, and equitable relief based upon the
        defalcation of the investment and retirement funds of each plaintiff by the
        defendants, a person and entities that held themselves out to plaintiffs as
        experienced, knowledgeable, competent, and lawful investment and retirement
        advisors, brokers, and consultants, but who in fact self-dealt and defrauded

1

plaintiffs of their funds..

## PARTIES

2.      Plaintiff Ravinder Mehra ("Ravi") is an individual at all times here in issue having a residence in the State of New Jersey.

3.      Plaintiff Manju Mehra ("Manju") is an individual at all times here in issue residing in the State of New Jersey; Manju Mehra is the wife of Ravinder Mehra..

4.      Plaintiff Rohan Mehra ("Rohan") is an individual who is a resident of both the State of New York, and the State of New Jersey; Rohan Mehra is the younger son of Ravinder and Manju Mehra.

5.      Plaintiff Rahoul Mehra ("Rahoul") is an individual at all times here in issue residing in the State of New York; Rahoul Mehra is the older son of Ravinder and Manju Mehra.

6.      Hereinafter, Ravinder Mehra, Manju Mehra, Rohan Mehra, and Rahoul Mehra may be referred to collectively as the "Mehra plaintiffs".

_____

7.      Plaintiff Kusum A. Zaveri ("Kusum") is an individual at all times here in issue residing in the State of New York; Kusum A. Zaveri is the grandmother of the infant plaintiffs, Dylan R. Reece ("Dylan"), and Declan Rowan Reece ("Declan").

8.      At all times here in issue the infant plaintiffs Dylan R. Reece, and Declan Rowan Reece. were and are individuals residing in the State of New York.

2

_____

9.      Plaintiff Lisa M. Martin ("Lisa") is an individual at all times here in issue residing in the State of Florida.

_____

10.     Upon information and belief, defendant James Tetrault ("Tetrault"), at all times here in issue, was and is an individual residing in, and doing business in the County of Erie, and State of New York.

11.     Upon information and belief, defendant Ocean Trading Partners, LLC, ("Ocean") at all times here in issue was and is a New York Limited Liability Company, with an office and place of business in the County of Erie and State of New York.

12.     Upon information and belief, defendant Interim Capital, LLC, ("Interim") at all times here in issue was and is a New York Limited Liability Company, with an office and place of business in the County of Erie and State of New York.

13.     Upon information and belief, at all times here in issue, defendant James Tetrault was the managing member and/or controlling person, and/or principal of Ocean Trading Partners, LLC.

14.     Upon information and belief, at all times here in issue, defendant James Tetrault was the managing member and/or controlling person, and/or principal of Interim Capital, LLC.

15.     Upon information and belief, at all times here in issue, defendants Ocean Trading Partners, LLC, and Interim Capital, LLC, were, and are the contrivances, alter-

3

egos and instrumentalities of defendant James Tetrault, created by him to implement, facilitate, and advance his investment fraud and theft of plaintiffs' (his clients') funds, which is the basis for this Complaint.

## JURISDICTION

16.     The Jurisdiction of this Court is based on Diversity of Citizenship; and the amount in issue exceeds the jurisdictional minimum required by the statute.

17.     The Jurisdiction of this Court is also based on the violation of Federal laws, regulations and rules governing the conduct of persons who conduct interstate businesses that invest personal and retirement funds of their clients, in particular, SEC Rule 10b-5 promulgated under section 10(b) of the Exchange Act, the ERISA statute, rules, and regulations, and the SIPA statute, rules, and regulations..

18.     The Jurisdiction of this Court is also based on the doctrine of Supplemental Jurisdiction which permits this Court in its discretion to retain claims of violation of State statutes and/or common law which prohibit the defalcation of clients' investment  monies, as for example by way of fraud, conversion, and unjust enrichment, which claims flow from and are part of the same facts, circumstances, and occurrences which are the basis for federal claims.

## THE CONTROVERSY

19.     Heretofore, from time to time beginning in 2003, and following, defendant Tetrault held himself out to plaintiffs to be a skilled, knowledgeable, and competent money and investment manager and an investment and retirement account specialist and

consultant.

20.    Tetrault represented to plaintiffs, and each of them, that he had been in the investment and retirement account business for more than fifteen years, and had engaged in that business principally in western New York, and elsewhere.

21.    Tetrault represented to plaintiffs that he conducted his business through two entities, Ocean Trading Partners, LLC, ("Ocean"), and Interim Capital, LLC, ("Interim") both upon information and belief New York limited liability companies, which he (Tetrault) owned and managed.

22.    Tetrault advised and assured plaintiffs that he was fully familiar with all Federal and State laws and regulations governing the investment savings and retirement account business, as well as any and all SEC rules and regulations applicable to his business - and that he was fully licensed, and at all times conducted his investment savings and retirement account business in accordance with these laws, regulations, and rules, and that any and all investments he would make for plaintiffs would be legal investments.

23.    Tetrault represented to certain of the plaintiffs (Ravinder Mehra, Rahoul Mehra, and Lisa M. Martin - hereinafter "the retirement plaintiffs") that he could manage and administer their retirement funds through FiServ, a qualified and licensed retirement/IRA administration company that he (Tetrault)  customarily worked with.

24.    Tetrault represented to plaintiffs that he had achieved good investment returns for his clients, both regarding investment savings accounts, and in retirement accounts.

25.    Tetrault represented that he was an experienced trader in blue chip stocks and

advised plaintiffs verbally and by reference to graphs and charts of the results that he had achieved with such money and investment management.

26.     Tetrault further represented to the retirement plaintiffs that he believed he could improve upon the performance and results and returns that they had obtained from their IRA  retirement account(s) in other institutions.

27.     Based on the solicitations and representations by Tetrault as above, plaintiffs and each of them agreed to retain Tetrault as their investment adviser and investment manager/broker.

28.     In reliance on Tetrault's representations, and on Tetrault's instructions, the retirement plaintiffs rolled over certain of their IRA retirement money to FiServ, acting as Tetrault's agent.

29.     The investments of each plaintiff and their losses are summarized in the paragraphs following:

## Kusum A. Zaveri f/b/o Dylan R. Reece, and Declan Rowan Reece

30.     Dylan R. Reece, and Declan Rowan Reece are the minor grandchildren of Ashvin Zaveri, and his wife, Kusum Zaveri.

31.     Kusum A. Zaveri was solicited by Tetrault, and based on his representations as above, established investment savings accounts for the education of her two grandchildren, Dylan Reece, and Declan Rowan Reece, with Tetrault's controlled company, Interim Capital, LLC.

32.     The initial investments made by Kusum Zaveri for her grandchildren were in the

amounts of $84,8 64.05 (Dylan Reece), and $22,063.36 (Declan Reece), as of 1/1/06.

33.     As of the last statement received from Interim Capital, LLC, dated September 20, 2006,  the account balances of Kusum Zaveri's grandchildren, according to Mr. Tetrault, were as follows:

|  |  |
|---|---|
| Kusum A. Zaveri f/b/o Dylan R. Reece | **$104,026.32** |
| Kusum A. Zaveri f/b/o Declan Rowan Reece | **$ 27,045.26** |

## Manju Mehra

34.     Manju Mehra is the wife of Ravinder Mehra.  On the basis of Mr. Tetrault's representations to her and her husband Ravinder Mehra, and solicitations, as above, Manju Mehra made an initial investment of  **$50,000.** with Mr. Tetrault on or about 6/9/03, which Mr. Tetrault placed in Interim Capital, LLC.

35.     Manju Mehra invested an additional **$25,000.** with Mr. Tetrault on 1/13/04, which Mr. Tetrault also placed with Interim Capital, LLC.

36.     The last statement received by Manju Mehra from James Tetrault for Interim Capital, LLC,  was dated September 30, 2006.  At that date, the account balance was stated as **$210,368.38.**

## Rohan Mehra

37.     Rohan Mehra, one of the sons of Ravinder and Manju Mehra, based on the representations of Mr. Tetrault to his mother and father Manju and Ravinder

7

Mehra, as above, and in written solicitations to him, Rohan Mehra invested **$20,000.** with Mr. Tetrault on or about 5/19/03, which Mr. Tetrault placed in Interim Capital, LLC.

38.    Rohan Mehra invested an additional **$15,000.** with Mr. Tetrault on 1/13/04, which Mr. Tetrault also placed with Interim Capital, LLC.

39.    The last statement received by Rohan Mehra from James Tetrault for Interim Capital, LLC,  was dated September 30, 2006.  At that date, the account balance was stated as **$98, 499.28.**

## Rahoul Mehra

40.    Rahoul Mehra is also the son of Manju and Ravinder Mehra.  Based on Mr. Tetrault's representations to his parents (and in writings to him), Rahoul Mehra invested **$20,000.** with Mr. Tetrault on or about 5/19/03, which Mr. Tetrault placed in Interim Capital, LLC.

41.    Rahoul Mehra invested an additional **$15,000.** with Mr. Tetrault on 1/13/04, which Mr. Tetrault also placed with Interim Capital, LLC.   Rahoul Mehra received his last account statement from Interim Capital, LLC, on 9/30/06; per that statement, Rahoul Mehra's investment account had a balance of **$98,499.28.**

42.    After Mr. Tetrault solicited his father Ravinder Mehra to rollover certain of his retirement money - which Ravinder Mehra did in reliance on Mr. Tetrault's representations and assurances, as above, Rahoul Mehra received written solicitations from Mr. Tetrault, and also rolled over in July of '06,  his IRA retirement account in the amount of **$116,052.66** through FiServ, the agent of James Tetrault, which funds, Tetrault placed in Ocean Trading Partners, LLC.

43.     Rahoul Mehra received his last account statement from Ocean Trading Partners, LLC, on 9/30/06; per that statement, Rahoul Mehra's rollover IRA retirement account had a balance of **$123,564.79.**

## Ravinder Mehra

44.     On the advice of James Tetrault, and his representations both verbal and in writing of his long experience and success in the investment business, in particular with retirement funds, Ravinder Mehra  rolled over his retirement money to Fiserv, a company that James Tetrault represented he was associated with in the investment and administration of retirement funds.

45.     Mr. Tetrault specifically represented to Ravinder Mehra that his money would be placed in Ocean Trading, and that Ocean Trading would invest Ravinder Mehra's retirement money in blue chip stocks.

46.     Based on these representations, Ravinder Mehra made an initial funding of **$200,000.** on or about 1/ 20/04, with an additional funding of **$ 47,500.** on or about 7/18/05.

47.     On Mr. Tetrault's instructions to FiServ, Ravinder Mehra's  rollover retirement money was invested with Ocean Trading Partners LLC, a company Mr. Mehra later learned was the controlled front for the investment fraud being perpetrated by Mr. Tetrault.

48.     The last statement received by Ravinder Mehra from Ocean Trading Partners, LLC, was dated September 30, 2006.  At that date, the account balance was stated as **$517,607.07.**

9

## Lisa M. Martin

49.    Lisa M. Martin was solicited by Mr. Tetrault, and based on his representations, she rolled over her IRA with Chase Bank.

50.    On Mr. Tetrault's instructions, the Martin IRA account was rolled over in two portions to FiServ Trust Company, the agent of Mr. Tetrault; **$100,544.47**, was rolled over in June/July '06, at Mr. Tetrault's instruction to FiServ, and was invested with Ocean Trading Partners LLC.

51.    **$4,310.87** remained in cash with FiServ.   Ms. Martin made a demand on FiServ for the return of the cash portion, and on 1/26/07, $4,050.87 was returned to her by FiServ.

52.    Lisa M. Martin's last statement from James Tetrault/Ocean Trading Partners LLC on September 30, 2006, showed an account balance of **$110,641.70.**

## THE FBI SEIZURES

53.    On or about December 13, 2006, James Tetrault wrote plaintiffs and each of them advising that the FBI had seized the accounts of Ocean Trading Partners, LLC account, and Interim Capital, LLC.

54.    Contemporaneous with this notification, the plaintiffs and each of them received letters from the FBI advising that their funds could be part of the funds seized from Tetrault's companies, and requesting that the plaintiffs complete forms detailing their losses caused by Tetrault and/or his companies, and stating any reasons they had for asserting a claim of ownership to the seized funds.

55.     The Tetrault accounts seized by the FBI as above are as follows:

| | | | |
|---|---|---|---|
| 07-FBI-000470 | 3110070009 | Date seized: 10/27/2006 | 262,983.87 |

Seizure location: Williamsville, NY
Asset Desc: $262,983.87 in funds in
account 7340123336 in the name of
Interim Capital, LLC at Citizens Bank,
Williamsville, NY

| | | | |
|---|---|---|---|
| 07-FBI-000464 | 3110070007 | Date seized: 10/27/06 | 14,725.78 |

Seizure location: Williamsville, NY
Asset Desc: $14,725.78 in funds in
account 4001311444 in the name of
Diltet Company, LLC at Citizens Bank,
Williamsville, NY

| | | | |
|---|---|---|---|
| 07-FBI-000 467 | 3110070008 | Date seized: 10/27/06 | 234,928.47 |

Seizure location: Williamsville, NY
Asset Desc: $234,928.47 in funds in
account 40003255096 in the name of
Ocean Trading Partners, LLC at Citizens Bank,
Williamsville, NY

56.     Upon receiving notification of Tetrault's fraud from the FBI, plaintiffs, and each of
them demanded - some in person, some through counsel -  that Tetrault
immediately identify the location of their investment and retirement account
money, and the stocks that had been purchased with their money.

57.     Plaintiffs and each of them further demanded - some in person, some through
counsel -  that Tetrault close their accounts, and make an immediate  refund of
their respective account balances to each of  them.

58.     Tetrault did not provide the account information requested by plaintiffs, nor did he
make any refunds (partial or in full), but rather Tetrault assured plaintiffs that

everything would be taken care of and they would be made whole.

59.    Upon information and belief, Tetrault never intended to invest and manage plaintiffs' investment and retirement money, as he (Tetrault) had represented, but rather intended to self-deal in plaintiffs' money for his personal gain through his captive instrumentalities, Ocean Trading Partners, LLC, and Interim Capital, LLC, without regard to his representations, and duty of fiduciary care to plaintiffs.

## THE PLEA AGREEMENT

60.    Defendant Tetrault has admitted the defalcation and theft of the investment and retirement monies of plaintiffs and others in a certain Plea Agreement dated April 10th, 2007, executed with the US Attorney for the Western District of NY, wherein defendant agreed to plead guilty to mail fraud, and identified both Ocean Trading and Interim Capital as the instrumentalities of his investment fraud.  That Plea Agreement is incorporated herein by reference.

61.    The factual basis for defendants' investment fraud on plaintiffs (and others) is set forth in paragraph 6 of the Plea Agreement; specifically,

    A.    defendants represented that they would deal fairly and honestly with their customers' monies, and invest their clients' monies in blue chip stocks, which they did not;

    B.    defendants represented that they had in the past for other customers made lawful investments which yielded significant gains and returns for their customers, which in fact they did not;

    C.    defendants represented that they would disclose to their customers all material facts concerning the proposed investments, which they did not;

    D.    defendants represented that they would not self-deal in investors' monies, which defendants' knew was a false representation, and which

representation, defendants violated upon receipt of investors' monies;

E.    defendants represented that investors' monies would earn profits, which defendants knew they would not;

F.    defendants represented in quarterly statements to investors' that their monies were earning profits, which in fact defendants' knew they were not;

G.    defendants used false performance models showing that investor monies were earning profits (when in fact they were not) in order to make investors believe they were earning profits which in fact they were not;

H.    defendants used their false performance statements to convince investors that their funds had grown in value, when in fact they had not;

I.    defendants used investor monies to fund personal loan and investment obligations which resulted in the total loss of these funds, all at a time when defendants continued to represent to investors that their funds were available for withdrawal, which in fact they were not;

62.    Plaintiffs and each of them were identified by the FBI as persons among the victims of Mr. Tetrault's fraud and illegal activities, and were requested by the FBI and US Attorney to provide victim's statements before the taking of Mr. Tetrault's guilty plea by the Plea Agreement as above.

63.    Plaintiffs by counsel submitted their letter-victims' statement, which is attached hereto as Schedule A.

## AS AND FOR A FIRST CLAIM

64.    Repeats and realleges paragraphs 1 through 63 above.

65.    Defendants' actions as above concerning each plaintiffs monies and accounts violated section 10(b) of the Securities and Exchange Act of 1934, 15 USC section 78j(b), and Rules 10b-5 and 10b-10 promulgated thereunder, 17 CFR section 240.10b-5, 10b-10.

66. Specifically, section 10(b) of the Exchange Act prohibits any person involved in the "purchase or sale of any security" from employing "any manipulative or deceptive device or contrivance in contravention of such rules and regulations' as the SEC "may prescribe."

67. Rule 10b-5 makes it unlawful for a person to make material misstatements or to omit material facts in connection with the purchase or sale of any security.

68. Defendants violated Rule 10b-5 concerning their solicitation of the investment and retirement funds of plaintiffs in that (a) in connection with the purchase or sale of a security (Ocean Trading and/or Interim Capital), (b) defendants, acting with scienter, (3) made a material misrepresentations and/or a material omissions of fact, all of which they admit in the Guilty Plea Agreement as above..

69. Defendants well knew that the investments by plaintiffs they induced with false performance representations had no chance of earning profits, and in fact were never earmarked for the purchase of so-called blue chip stocks, but rather were earmarked by defendants to cover their personal debts and stock losses, resulting in the theft, and permanent disappearance of plaintiffs' investment and retirement monies.

## AS AND FOR A SECOND CLAIM

70. Plaintiffs repeat and reallege paragraphs 1 through 69 above.

71. Defendants' actions as above - the theft of retirement monies of certain of the plaintiffs, as heretofore identified - violate the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 USC sec. 1001 et seq.

14

72.     Defendants are ERISA plan fiduciaries within the meaning and intent and purpose of the Act. Plaintiffs are plan beneficiaries and also are entitle to the protection of SIPA, 15 USC secs 78fff-2(b) & (c)(1), as they may apply.

73.     Specifically, ERISA sec 404(a) imposes on ERISA plan fiduciaries the "[p]rudent man standard of care."  29 USC sec. 1104(a).

74.     Section 404(a)(1) states that the fiduciary must discharge his duties "solely in the interest of the [ERISA plan] participants and beneficiaries," 29 USC sec 1104(a)(1), and must do so "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims . . . ."  Id. sec. 1104(a)(1)(B).

75.     Defendants admitted self-dealing and theft of plaintiffs investment retirement account monies violate their duty of fiduciaries under ERISA, and by reason thereof, they should be ordered to restore the funds stolen from the identified retirement plaintiffs, and make good their losses.  Section 409(a) , 29 USC sec. 1109(a).

## AS AND FOR A THIRD CLAIM

76.     Plaintiffs repeat and reallege paragraphs 1 through 69 above.

77.     In agreeing to plead guilty to mail fraud in the Plea Agreement, defendants admitted to:

        1.     Depriving their customers of the intangible right to a broker's honest services;

2.    Depriving their principals/investors of the intangible right to a fiduciary's honest services;

3.    Violating a broker's duty to disclose to the broker's customers all material facts concerning securities transactions in the customer's accounts;

4.    Violating a fiduciaries duty to disclose to his principal all material facts concerning any self interest the fiduciary might have concerning securities transactions in the principal's account; and

5.    Making false representations to a customer about the amount of remuneration to be received by a broker in connection with a securities transaction;

78.   Defendants' representations as above constitute material misrepresentations of fact which induced plaintiffs' investments, and resulted in their total loss by reason of defendants, admitted thefts and defalcations.

79.   Defendants misrepresentations are actionable fraud under the law of New York; specifically defendants admitted in the Plea Agreement that they made (a) a material misrepresentation or omission of fact [misrepresentations and omissions stated in paras 61, and 77 above], (b) these material misrepresentations or omissions of fact were made by defendants with knowledge of their falsity, (c) these material misrepresentations or omissions of fact were made by defendants with intent to defraud plaintiffs, (d) and plaintiffs reasonably relied on defendants' material misrepresentations or omissions of fact, and (e) by reason thereof, plaintiffs and each of them suffered damage - the loss of all of their investment and/or retirement monies invested with defendants.

## AS AND FOR A FOURTH CLAIM

80.     Plaintiffs repeat and reallege paragraphs1 through 69 above.

81.     Defendant retains plaintiffs' money as above, despite plaintiffs' clear entitlement in law and in equity to the return of the money.

82.     Accordingly, defendants have been unjustly enriched, at plaintiffs expense, and are obligated in law and in equity to return plaintiffs' monies to them.

### AS AND FOR A FIFTH CLAIM

83.     Plaintiffs repeat and reallege paragraphs 1 through 69 above.

84.     Defendants have no claim of right to plaintiffs' money as above.

85.     Defendants retention of plaintiffs' monies is in law and in fact an intentional conversion of plaintiffs' monies for which plaintiffs and each of them are entitled both to the return of their monies, and such additional damages as may be determined by this Court.

### AS AND FOR A SIXTH CLAIM

86.     Repeats and realleges paragraphs "1" through "69" above.

87.     Plaintiffs, and each of them, have demanded that defendants account for their breach of fiduciary duty to plaintiffs, and their conversion of plaintiffs' money, but defendants have failed and refused to do so.

88.     Plaintiffs are entitled to an accounting concerning defendants' disposition of plaintiffs' monies.

17

89.     Plaintiffs have no adequate remedy at law.

### ON EACH CLAIM

90.     To the extent that any of the Claims pleaded by plaintiffs be deemed exclusively equitable in nature, plaintiffs plead that they have no adequate remedy at law.

### ON EACH CLAIM

91.     Repeats and realleges paragraphs "1" through "90" above.

92.     Defendants' conduct concerning their theft, misappropriation, concealment, and retention of plaintiffs' money, has been willful, intentional, malicious, and aggravated - intentionally harmful both to plaintiffs personally, and to the public generally -  and by reason thereof, plaintiffs are entitled to an assessment of punitive damages against defendants, as this Court may determine.

**WHEREFORE**, Plaintiffs demand Judgment against defendants in the amounts indicated:

1.      <u>On the First Claim</u>

Kusum A. Zaveri f/b/o Dylan R. Reece          **$104,026.32**

Kusum A. Zaveri f/b/o Declan Rowan Reece  **$ 27,045.26**

Ravinder Mehra                                   **$517,607.07**

Manju Mehra                                      **$210,368.38**

Rohan Mehra                                      **$98, 499.28**

Rahoul Mehra                                      **$98,499.28**

                                                 **$123,564.79**

Lisa M. Martin                                    **$110,641.70**

2.      On the Second Claim
        Ravinder Mehra                            **$517,607.07**
        Rahoul Mehra                              **$123,564.79**
        Lisa M. Martin                            **$110,641.70**

3.      On the Third Claim     -     damages as indicated for First Claim

4.      On the Fourth Claim    -     damages as indicated for First Claim

5.      On the Fifth Claim     -     damages as indicated for First claim

6.      On the Sixth Claim     -     a full accounting

7.      On each Claim          -     punitive damages as the Court may
                                     determine

8.      On each Claim          -     a mandatory injunction requiring that
                                     Defendants return plaintiffs' monies dollar
                                     for dollar, and indemnify them, and make
                                     them whole

9.      On each Claim          -     a Jury Trial

10.     With the costs and disbursements of this action, and such other and further
        relief as the Court may deem just and proper.

Dated: June 4, 2007

Rochester, NY                         *s/ Frank A. Aloi*

Frank A. Aloi, Esq. Attorney for Plaintiffs
Donald L. Summer, Esq., Attorney for Plaintiffs
980 Westfall Road, Ste. 127
Rochester, NY 14618
(585) 262-3660, fax 262-3666 email [faappeals@aol.com](mailto:faappeals@aol.com)

# SCHEDULE   A

**FRANK A. ALOI, ESQ.**
**ATTORNEY AT LAW**
980 Westfall Road, Suite 127
Rochester, NY 14618
(585) 262-3660, fax 262-3666
email faappeals @aol.com

Business and Regulatory Consulting/Litigation
Zoning/Municipal Law
Civil/Criminal Appeals
[State/Federal]
Admitted NY

April 6, 2007

Terrance P. Flynn,
United States Attorney, WD, NY
US Department of Justice
138 Delaware Avenue
Buffalo, NY 14202

Attn:   Sharon M. Knope
        Victim Witness Coordinator

Re:   United States -vs- James Tetrault
      Plea Date: 4/10/07
      Victims' Statement

Dear Mr. Flynn, and Ms. Knope:

        I represent several of the victims of the investment fraud perpetrated by James
Tetrault.  Kusum Zaveri, and her grandchildren Dylan and Declan Reece; Ravinder Mehra, and his
wife Manju Mehra, and their two sons Rohan Mehra, and Rahoul Mehra, and Lisa Martin.  All are
honest, hard working persons, who put their trust in James Tetrault, for investment advice and
services.  They have asked me to submit this letter on their behalf for review by the Court,
outlining the dimension of the fraud perpetrated on them by Mr. Tetrault, and the catastrophic
financial consequences that they have suffered.  All but Kusum Zaveri live in other States and are
unable to personally attend the pending Court proceedings in the Tetrault case.  Kusum Zaveri is
a working grandmother who is assisting her daughter with the care of her new born
granddaughter, and cannot get away to travel to Buffalo, from her home in the metro Rochester
area.

        James Tetrault worked his fraud on my clients through persistent verbal and
written misrepresentations, including several personal meetings with his victims and their families.
He even concocted investment seminars as further proof of his experience and performance in the
investment business.  He represented himself as a skilled and competent money and investment

21

manager and an investment and retirement account specialist and consultant. He indicated that he had been in the investment and retirement account business for many years, and had engaged in that business principally in western New York. Tetrault represented that he conducted his business through two entities, Ocean Trading Partners, LLC, ("Ocean"), and Interim Capital, LLC, ("Interim") both New York limited liability companies, which he (Tetrault) owned and managed. Tetrault was articulate and persistent, and backed up his claims of experience and investment "results" with a great deal of documentation, stock charts, performance results, etc., all of which appeared to be real, and which unfortunately was absolutely bogus.

He professed that his business was centered on blue chip stocks, and he produced charts and performance results to prove his claims. All false.

He indicated that he was fully familiar with all Federal and State laws and regulations governing the investment savings and retirement account business, as well as any and all securities exchange rules and regulations applicable to his business - and that he was fully licensed, and at all times conducted his investment savings and retirement account business in accordance with these laws, regulations, and rules, and that any and all investments he would make for his clients would be legal and proper investments. All false.

Tetrault represented that he was an experienced trader in blue chip stocks and advised his clients of the results that he had achieved with such money and investment management. All false.

Tetrault further represented that he believed he could improve upon the performance and results and returns that his clients had obtained elsewhere from their hard earned IRA retirement account(s) in other institutions. All false.

Tetrault never intended to invest and manage his clients' investment and retirement money, as he (Tetrault) had represented, but rather intended to self-deal in their money for his personal gain, without regard to his representations, and duty of fiduciary care to persons who in good faith placed their trust in him. All of his companies, including Ocean Trading Partners, LLC and Interim Capital, LLC were his alter-egos, and contrivances, to advance his fraudulent intentions to steal his clients' money for his personal enrichment.

_____

**So insidious was Tetrault's fraudulent scheme that he continued to assure his clients of his good intentions, and honesty, well AFTER the FBI victim letters and account seizure notifications were sent out. Double talk, "blue smoke and mirrors", are his mantra.**

**Mr. Tetrault is not a person with good intentions who because of blind happenstance did not succeed in producing intended results; he never acted in good faith; he is a predator; his intentions were neither honorable, nor legal; it was not negligence that resulted in the losses to my clients; James Tetrault fraudulently induced my clients to place**

22

**their trust in him, so that he could steal their money; it is respectfully submitted that he is not entitled to the benefit of any doubt in terms of the penalties he now faces before the criminal bar of this Court.**

The following is a brief summary of the investments made by my clients with James Tetrault:

## Kusum A. Zaveri f/b/o Dylan R. Reece, and Declan Rowan Reece

Dylan R. Reece, and Declan Rowan Reece are the minor grandchildren of Ashvin Zaveri, and his wife, Kusum Zaveri.

These accounts were savings/investment accounts established for the education of the Zaveri grandchildren with James Tetrault, and his controlled company, Interim Capital, LLC.

As of the last statement received from Interim Capital, LLC, dated September 20, 2006, the account balances according to Mr. Tetrault were as follows:

Kusum A. Zaveri f/b/o Dylan R. Reece  **$104,026.32**
Kusum A. Zaveri f/b/o Declan Rowan Reece **$ 27,045.26**

## Ravinder Mehra

On the advice of James Tetrault, and his representations both verbal and in writing of long experience in the investment business, in particular with retirement funds, Ravinder Mehra rolled over his retirement money to Fiserv, a company that James Tetrault represented was his associate in administering retirement funds.  The initial funding of **$200,000.** was made on or about 1/ 20/04, with an additional funding of **$ 47,500.** on or about 7/18/05. On Mr. Tetrault's instructions to FiServ, the rollover retirement money was invested with Ocean Trading Partners LLC, a company Mr. Mehra later learned was the controlled front for the investment fraud being perpetrated by Mr. Tetrault.

Ravinder Mehra's retirement account rollover with James Tetrault, Ocean Trading Partners, LLC, resulted in Mr. Mehra recommending Mr. Tetrault to his wife Manju, and his two sons, Rohan, and Rahoul, for investment management and retirement fund management services.

The last statement received by Ravinder Mehra from Ocean Trading Partners, LLC, was dated September 30, 2006.  At that date, the account balance was stated as **$517,607.07.**

## Manju Mehra

Ravinder Mehra is the husband of Manju Mehra.  Manju Mehra made an initial

investment of **$50,000.** with Mr. Tetrault on or about 6/9/03, which Mr. Tetrault placed in Interim Capital, LLC.   Manju Mehra invested an additional **$25,000.** with Mr. Tetrault on 1/13/04, which Mr. Tetrault also placed with Interim Capital, LLC.

The last statement received by Manju Mehra from James Tetrault for Interim Capital, LLC, was dated September 30, 2006.  At that date, the account balance was stated as **$210,368.38.**

## Rohan Mehra

Rohan Mehra, one of the sons of Ravinder and Manju Mehra, invested **$20,000.** with Mr. Tetrault on or about 5/19/03, which Mr. Tetrault placed in Interim Capital, LLC. Rohan Mehra invested an additional **$15,000.** with Mr. Tetrault on ½0/04, which Mr. Tetrault also placed with Interim Capital, LLC.

The last statement received by Rohan Mehra from James Tetrault for Interim Capital, LLC, was dated September 30, 2006.  At that date, the account balance was stated as **$98, 499.28.**

## Rahoul Mehra

Rahoul Mehra is also the son of Manju and Ravinder Mehra.  Rahoul Mehra invested **$20,000.** with Mr. Tetrault on or about 5/19/03, which Mr. Tetrault placed in Interim Capital, LLC.   Rahoul Mehra invested an additional **$15,000.** with Mr. Tetrault on 1/13/04, which Mr. Tetrault also placed with Interim Capital, LLC.   Rahoul Mehra received his last account statement from Interim Capital, LLC, on 9/30/06; per that statement, Rahoul Mehra's investment account had a balance of **$98,499.28.**

In July of '06, Rahoul Mehra also rolled over his IRA retirement account in the amount of **$116,052.66** through FiServ, the agent of James Tetrault, which funds, Tetrault placed in Ocean Trading Partners, LLC.  Rahoul Mehra received his last account statement from Ocean Trading Partners, LLC, on 9/30/06; per that statement, Rahoul Mehra's rollover IRA retirement account had a balance of **$123,564.79.**

## Lisa M. Martin

Ms. Martin's account was an IRA Rollover from Chase Bank; on Mr. Tetrault's instructions, the account was rolled over in two portions to FiServ Trust Company, the agent of Mr. Tetrault; **$4,310.87** remained in cash with FiServ; **$100,544.47**, in June/July '06, at  Mr. Tetrault's instruction to FiServ, was invested with Ocean Trading Partners LLC.  Ms. Martin made a demand on FiServ for the return of the cash portion, and on 1 /26/07, $4,050.87 was returned to her by FiServ.

Lisa Martin's last statement from James Tetrault/Ocean Trading Partners LLC on September 30, 2006, showed an account balance of **$110,641.70.**

Respectfully submitted

*s/ Frank A. Aloi*

_____

Frank A. Aloi, Esq.